UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERPRECE XAVIER FILMORE,

        Plaintiff,

v.                            Case No: 3:18-cv-955-J-39MCR

OFFICER COOPER, et al.,

        Defendants.

_____

**ORDER**

**I. Status**

    Plaintiff, Jerprece Xavier Filmore, an inmate of the Florida
Department of Corrections (FDOC), is proceeding on a pro se amended
civil rights complaint under 42 U.S.C. § 1983 (Doc. 10; Compl.)[1]
against four individuals: Officer Cooper; Officer Atwell; Warden
Godwin; and Captain Minnich. Before the Court are the following
motions: (1) Defendant Godwin's motion to dismiss (Doc. 25; Godwin
Motion); (2) Defendant Atwell's motion to dismiss (Doc. 31; Atwell
Motion); and (3) Defendants Cooper and Minnich's motion to dismiss
(Doc. 48; Cooper Motion). Plaintiff responded to the motions (Doc.
28; Pl. Godwin Resp.) (Doc. 39; Pl. Atwell Resp.) (Doc. 52; Pl.
Cooper Resp.). The motions are ripe for review.

---

[1] Plaintiff filed a "cover letter" with his complaint (Doc.
10-1, which the Court will reference as "Compl. Supp."

## II. Motion Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, the complaint allegations must be construed in the light most favorable to the plaintiff. Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 511 (11th Cir. 2019). When a plaintiff proceeds pro se, the court must liberally construe the allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680.

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Gill, 941 F.3d at 511 (quoting Iqbal, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id.

### III. Complaint Allegations

Plaintiff's claims arise out of conduct that occurred at Columbia Correctional Institution (CCI) in July 2018. Plaintiff asserts Defendants exposed him to cruel and unusual prison conditions and used excessive force in violation of the Eighth Amendment and denied him procedural due process with respect to a prison transfer and administration of chemical agents. See Compl. at 3, 4; Compl. Supp. at 1.

Plaintiff alleges he was improperly sent back to CCI's main unit from the Annex on July 11, 2018. See Compl. Supp. at 1. (Plaintiff explains he should not have been sent back to the main unit because in March 2018, at the main unit, he incurred a disciplinary report for aggravated battery against an officer who is not a party to this action. Id.) At the main unit, Plaintiff was placed in a cell with no ventilation, no window, and no sprinkler. See Compl. at 5. Plaintiff alleges the cell was at least 95 degrees with the only air coming from under the door. Id.

Two days after he returned to the main unit, on July 13, 2018, Plaintiff reached his "breaking point" because of the extreme heat.[2] See Compl. Supp. at 2. Plaintiff says, in an "attempt of survival," he asked Defendant Cooper to have a psych counselor evaluate him. Compl. at 5. Defendant Cooper denied his request and

---

[2] Plaintiff alleges he lost ten pounds in two days because of the extreme conditions. See Compl. at 8.

taunted him. Plaintiff then used a bed sheet to open the flap on his cell door to get some fresh air. Id. Plaintiff asserts Defendant Cooper pulled on the sheet "like a maniac," ripping the sheet out of Plaintiff's hands, causing "harm to [his] hands and fingers." Id. at 5-6. Plaintiff contends Defendant Cooper "had evil intent" against him in retaliation for Plaintiff's March attack on an officer. See Compl. Supp. at 3.

Defendant Minnich approved the use of chemical spray, Compl. at 6, and Defendant Atwell administered the spray, Compl. Supp. at 3. Plaintiff alleges Defendant Minnich approved the use of chemical spray in retaliation for Plaintiff having filed a grievance against Minnich in the past. Compl. at 6. Afterward, Officers took Plaintiff for a decontamination shower and medical evaluation. Id. at 6; Compl. Supp. at 4. Plaintiff asserts he was sprayed in violation of a provision of the Florida Administrative Code because a psych specialist was not consulted beforehand. Compl. at 6.

Plaintiff also alleges Defendant Cooper beat him in a holding cell while waiting for a nurse to evaluate him. Id. at 7. Plaintiff asserts Defendant Cooper's attack resulted in an injury to the back of his head. Id. at 8.

As relief, Plaintiff seeks compensatory and punitive damages and for Defendants to be "stripped of their jobs." Id.

## IV. Defendants' Motions

Defendants seek dismissal of Plaintiff's claims related solely to the use-of-force incidents on July 13, 2018. See Godwin Motion at 5-6, 13; Atwell Motion at 5-6, 13; Cooper Motion at 7-8. Defendants argue Plaintiff failed to exhaust his administrative remedies and fails to state an Eighth Amendment violation entitling Defendants to qualified immunity. See Godwin Motion at 5, 8, 14-15; Atwell Motion at 5, 7, 8, 14; Cooper Motion at 3, 7. Defendants Cooper and Minnich also invoke Eleventh Amendment immunity. See Cooper Motion at 9.

## V. Analysis & Conclusions

### A. Dismissal Under 28 U.S.C. § 1915(e)

Defendants do not address Plaintiff's purported claims related to his transfer and the extreme prison conditions he endured when he arrived back at CCI's main unit on July 11, 2018. See Compl. at 3, 4, 7. Defendants also do not address Plaintiff's assertion that Defendants Atwell and Minnich violated his procedural due process rights by using chemical agents on him without first obtaining a mental health consultation as required under rule 33-602.210 of the Florida Administrative Code. Id. at 3. See also Pl. Atwell Resp. at 3, 6; Pl. Cooper Resp. at 3, 6. Thus, as a preliminary matter, the Court sua sponte invokes its authority under the Prison Litigation Reform Act (PLRA) to assess the viability of these claims. See 28 U.S.C. § 1915(e)(2)(B).

Liberally construing Plaintiff's complaint, he attempts to assert a claim against Defendant Godwin for the alleged improper transfer and "inhumane" prison conditions.[3] Plaintiff provides two informal grievances he filed on July 12, 2018, complaining about having been transferred back to the main unit and about the excessive heat in his cell. See Compl. Supp. at 6, 7. His grievances were approved; the responding prison official told Plaintiff a transfer was pending. Id.

It is apparent Plaintiff seeks to hold Defendant Godwin liable simply because of Godwin's position as Warden. In the supplement to his complaint, Plaintiff says, "people like Godwin the warden at Columbia are surely familiar with [security and housing] issues and as a warden of any facility it is in [his] responsibility to assure care, custody, protection, and control over [the] facility." Compl. Supp. at 5. Additionally, in response to Warden Godwin's motion, Plaintiff says: "Who not more suitable to [be] held responsible for the actions [and] status of a prison, then [sic] the head official of the prison?" See Pl. Godwin Resp. at 1.

Plaintiff's theory of liability against Warden Godwin has been rejected in the Eleventh Circuit. See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted) ("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the

---

[3] Plaintiff does not attribute the transfer or prison conditions to Defendants Atwell, Cooper, or Minnich. See Compl. at 3, 4, 7.

unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."). Supervisor liability arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted). See also Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 852 (11th Cir. 2012) (affirming summary judgment in favor of a defendant sued "only in his supervisory capacity" because the plaintiff asserted no allegations that the defendant participated in the action or that he was causally responsible for any violations).

Plaintiff does not allege facts showing a causal connection between the alleged constitutional violation and any actions or omissions by Warden Godwin. For instance, Plaintiff does not assert Warden Godwin directed his transfer or directed prison officials to place him in a hot cell with no ventilation. Plaintiff also does not identify a policy or custom Warden Godwin adopted or ratified that resulted in the violation of his constitutional rights. See Compl. at 5-7.

Even if Plaintiff alleged Warden Godwin directed his transfer to the main unit at CCI, his claim would fail. Inmates do not have a constitutional right to be housed at a particular penal institution. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is

well settled that the decision where to house inmates is at the core of prison administrators' expertise."); <u>Barfield v. Brierton</u>, 883 F.2d 923, 936 (11th Cir. 1989) ("[I]nmates usually possess no constitutional right to be housed at one prison over another.").

Accordingly, assuming the July 12, 2018 grievances, which were approved, show proper exhaustion of Plaintiff's complaints that he was improperly transferred and endured inhumane prison conditions, Plaintiff fails to state a plausible claim for relief against Warden Godwin.

As to the use of chemical agents, accepting as true that Defendant Minnich directed Defendant Atwell to spray Plaintiff without first consulting a "qualified mental health professional," Plaintiff fails to allege a constitutional violation. A violation of a state's administrative policy is not actionable under § 1983. Indeed, to state a claim under § 1983, a plaintiff must allege "the defendant deprived [him] of a right secured under the Constitution or federal law." <u>See</u> <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011). Thus, Plaintiff does not state a claim against Defendants Minnich or Atwell for the denial of due process related to the use of chemical agents.

Under 28 U.S.C. § 1915(e)(2)(B), the Court will dismiss the above claims against Defendants Godwin, Minnich, and Atwell for Plaintiff's failure "to state a claim on which relief may be granted."

## B. Excessive-Force Claims

Plaintiff alleges Defendants Atwell, Cooper, and Minnich used (or approved the use of) excessive force against him on July 13, 2018. And Plaintiff contends Warden Godwin is responsible for Defendants Atwell, Cooper, and Minnich's actions because it "is the responsibility of the Warden" to ensure employees comply with administrative rules and policies. See Compl. at 6. Because Plaintiff's claim against Warden Godwin is premised on a theory of supervisor liability, as previously discussed, Plaintiff's claim against Warden Godwin fails. See Cottone, 326 F.3d at 1360.

Defendants Atwell, Cooper, and Minnich assert Plaintiff did not exhaust his administrative remedies as to the July 13, 2018 use-of-force incidents.[4] Exhaustion is a matter in abatement. As such, the Court first will address whether Defendants show Plaintiff failed to exhaust his administrative remedies and then will address whether Plaintiff fails to state a claim.

The PLRA provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones v. Bock, 549 U.S. 199, 211 (2007).

---

[4] Clearly, the July 12, 2018 grievances do not constitute proper exhaustion of claims that arose on July 13, 2018.

While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211).

Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones, 549 U.S. at 216. Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense." Id. Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford, 548 U.S. at 93. As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Generally, to properly exhaust administrative remedies, a Florida prisoner must complete a three-step process as fully set forth in the Florida Administrative Code. See Fla. Admin. Code r. 33-103.001 through 33-103.018. First, a prisoner must file an informal grievance. See Fla. Admin. Code r. 33-103.005. If the informal grievance is denied, the prisoner must file a formal grievance at the institution level. See Fla. Admin. Code r. 33-103.006. Finally, if the formal grievance is denied, the prisoner must appeal to the Office of the Secretary of the FDOC. See Fla. Admin. Code r. 33-103.007.

When confronted with an exhaustion defense, courts employ a two-step process:

> First, district courts look to the factual
> allegations in the motion to dismiss and those
> in the prisoner's response and accept the
> prisoner's view of the facts as true. . . .
> Second, if dismissal is not warranted on the
> prisoner's view of the facts, the court makes
> specific findings to resolve disputes of fact,
> and should dismiss if, based on those
> findings, defendants have shown a failure to
> exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted) (citing Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008)).

Plaintiff provides grievance documents, which show he successfully completed the first step of the grievance process (Doc. 28-1; Pl. Ex.). Two days after the incidents, on July 15, 2018, Plaintiff filed informal grievances complaining about Defendant Cooper's conduct of ripping the sheet from his hands, Pl. Ex. at 3,[5] and Defendant Atwell, Cooper, and Minnich's use of chemical agents, id. at 4.[6] His informal grievances were denied.

_____

[5] Plaintiff did not grieve Defendant Cooper's alleged use of force against him in the holding cell.

[6] In his grievance, Plaintiff names Defendant Cooper as being involved in the use of chemical agents. See Pl. Ex. at 4. In his complaint, however, Plaintiff alleges Defendant Minnich approved the use of chemical agents, and Defendant Atwell administered the spray. See Compl. at 6. Plaintiff does not allege Defendant Cooper participated in the use of chemical agents. Id.

Id. at 3, 4. Plaintiff did not proceed to the second step of the grievance process (formal grievance at the institution level).

In his responses to Defendants' motions, Plaintiff concedes he failed to proceed to the next step of the grievance process. To excuse his failure, he says exhaustion is not mandatory and is within the court's discretion; he could have been retaliated against for filing grievances; the grievance system cannot give him what he wants (money and termination of employees); and the institution is biased and "subversive." See Pl. Godwin Resp. at 4-5; Pl. Atwell Resp. at 6-7; Pl. Cooper Resp. at 4-5. These arguments are unavailing because the case upon which Plaintiff relies is no longer good law. See McCarthy v. Madigan, 503 U.S. 140, 150-51 (1992), superseded by statute, 42 U.S.C. § 1997e(a), as stated in Woodford, 548 U.S. at 85.

Contrary to Plaintiff's assertion, exhaustion under the PLRA is indeed mandatory and not subject to a district court's discretion. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."); Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Moreover, a prisoner seeking money damages still "must complete a prison administrative process" even though such relief is not available

through the prison grievance process. See Booth v. Churner, 532 U.S. 731, 734 (2001).

Plaintiff asserts one argument with potential viability for his failure to properly exhaust his administrative remedies. He contends the grievance process was unavailable to him because when he requested formal grievance forms, "employees" told him there were none. See Pl. Godwin Resp. at 5; Pl. Atwell Resp. at 6-7; Pl. Cooper Resp. at 4-5. Under the first step of the exhaustion analysis, the Court accepts Plaintiff's assertion as true. Thus, the Court proceeds to the second step of the exhaustion analysis, which requires the Court to resolve disputed factual issues and make credibility determinations. See Turner, 541 F.3d at 1083; Bryant, 530 F.3d at 1376 (holding district courts must act as factfinders when ruling on matters in abatement, such as exhaustion).

Upon review, the Court finds Plaintiff's contention that he was unable to obtain formal grievance forms is not only conclusory but is not credible. Under the Florida Administrative Code, prisoners have multiple avenues available to them to obtain grievance forms: "[Grievance forms] shall be available as [sic] a minimum from the institutional library, classification department, classification staff, and the housing officer of any living unit or confinement unit." See Fla. Admin. Code r. 33-103.015(2). Plaintiff does not provide any factual detail explaining the steps

he took to obtain formal grievance forms, such as who he asked, how many times he asked, or whether he took other measures to obtain the forms.

While it is plausible that one, or even a few, employees may have declined to physically hand Plaintiff a grievance form, it is implausible that absolutely no grievance forms were available throughout the prison. It is also implausible that multiple employees would have refused Plaintiff grievance forms given employees are subject to discipline for such conduct: "Staff found to be obstructing an inmate's access to the grievance process shall be subject to disciplinary action." See Fla. Admin. Code r. 33-103.017(1). Plaintiff's self-serving, conclusory assertion is insufficient to show the grievance process was unavailable to him.

Assuming for the sake of argument no formal grievance forms were available when Plaintiff requested them, Plaintiff fails to show he attempted to file a formal grievance once the forms became available. The Florida Administrative Code permits a prisoner to seek an extension of the time to file a grievance at each step of the process upon a showing of a good faith effort to timely comply: "An extension of the . . . time periods shall be granted when it is clearly demonstrated by the inmate . . . that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." See Fla. Admin. Code r. 33-103.011(2). Had there been no formal

grievance forms available throughout the prison, filing such a form would not have been feasible. As such, Plaintiff should have followed administrative procedures to obtain an extension of the filing period. Plaintiff provides no evidence he did so.

For the above reasons, the Court finds Defendants demonstrate Plaintiff failed to exhaust his administrative remedies as to the July 13, 2018 use-of-force incidents. However, even if the grievance process was unavailable to Plaintiff, the only issues he would have exhausted are ones that are not constitutional violations: Defendant Cooper's ripping the sheet from his hands and the use of chemical agents.

As to Defendant Cooper's conduct, unkind acts, even if done out of anger, do not constitute "cruel and unusual punishment" under the Eighth Amendment. Not "every malevolent touch" by a prison official constitutes a malicious and sadistic use of force. Hudson v. McMillian, 503 U.S. 1, 10 (1992). To establish a violation of the cruel and unusual punishment clause, a plaintiff must allege "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). De minimis uses of physical force, even if unnecessary, do not violate the Eighth Amendment provided the force is not "of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 10 (quoting Whitley, 475 U.S. at 327). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers, violates a prisoner's constitutional rights." Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In his complaint, Plaintiff describes no more than a de minimis use of physical force by Defendant Cooper, which is not actionable under § 1983 as an Eighth Amendment violation. Accepting that Defendant Cooper's actions were unnecessary, Plaintiff fails to allege Defendant Cooper acted in a malicious or wanton manner or in a way that would be repugnant to the conscience of mankind. Plaintiff does not allege Defendant Cooper acted with more than ordinary lack of due care when he ripped the sheet through the cell flap and out of Plaintiff's hands. Thus, Plaintiff fails to state a claim against Defendant Cooper.

Moreover, Plaintiff's allegations, accepted as true, fail to show Defendants Atwell's or Minnich's conduct amounts to an Eighth Amendment violation. The Eighth Amendment's proscription against cruel and unusual punishment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). However, Eighth Amendment jurisprudence permits prison guards leeway to use force when necessary "to maintain or restore discipline," and courts must be mindful that they normally should not interfere in matters of prison administration or inmate discipline. Whitley, 475 U.S. at 320-21, 322. In their role of maintaining order and ensuring safety, prison guards must react to

and resolve prison disturbances or threats of harm. See, e.g., Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991) (citing Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987)).

The Eleventh Circuit has articulated five factors courts may consider in determining whether an officer's use of force was in good faith or carried out maliciously and sadistically for the purpose of causing harm:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7 ). See also Ort, 813 F.2d at 323; Williams, 943 F.2d at 1575.

Applying the above factors and accepting Plaintiff's allegations as true, Plaintiff fails to state a plausible Eighth Amendment violation against Defendants Minnich and Atwell. By Plaintiff's own allegations, a use of force was justified. Plaintiff acknowledges he engaged in conduct necessitating application of force. He alleges he used his sheet to open the flap in his cell door, which prompted a cell-front assessment by Defendant Minnich, the captain on duty at the time. See Compl. at 5. Additionally, in his complaint supplement and his response to

Defendant Atwell's motion, Plaintiff concedes he exhibited behavior deemed a disturbance. In fact, he faults Defendant Minnich for not obtaining an evaluation to determine whether "[his] issues were psych relate[d] or behavior management." See Compl. Supp. at 3 (emphasis added). See also Pl. Atwell Resp. at 3 (failure to determine whether the "issue [was] behavior management or psych related").

Additionally, the amount of force used was minimal. "A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (holding the use of chemical agents was a "reasonable response" to the prisoner's failure to disobey orders). Plaintiff does not allege Defendant Atwell sprayed him for an unnecessarily long time or in such a manner that would permit the inference Defendant Atwell acted for reasons other than "to maintain or restore discipline." Whitley, 475 U.S. at 320-21.

While Plaintiff undoubtedly suffered discomfort or temporary trouble breathing as a result of the chemical spray, such is to be expected and does not, by itself, demonstrate excessive force. Id. at 1308 ("Pepper spray is designed to disable a suspect without causing permanent physical injury.") (internal quotation marks omitted). Moreover, accepting Plaintiff's allegations as true,

Defendants took steps to "temper the severity of [their] forceful response." See Campbell, 169 F.3d at 1375. Plaintiff alleges officers took him for a decontamination shower and medical evaluation immediately after Defendant Atwell sprayed him. See Compl. at 6; Compl. Supp. at 4.

In sum, Plaintiff fails to show Defendants Minnich or Atwell administered chemical agents against him "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. Plaintiff's bald assertion that Defendant Minnich's conduct was done in retaliation for Plaintiff having filed a grievance against Minnich in the past is a mere conclusion unsupported by factual allegations. As such, it amounts to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which does not satisfy the federal pleading standard. Iqbal, 556 U.S. at 678. Plaintiff merely speculates the use of chemical agents was an act of retaliation against him for filing a grievance in the past. See Compl. at 6. He asserts no facts permitting the inference Defendant Minnich acted for reasons other than legitimate penological concerns.

## C. Conclusion

Plaintiff did not exhaust his administrative remedies as to the July 13, 2018 use-of-force incidents. Additionally, Plaintiff fails to state a claim for relief against Defendants. As such,

they are entitled to qualified immunity, and their motions will be granted.

Accordingly, it is now

**ORDERED:**

1. Defendant Godwin's motion to dismiss (Doc. 25) is **GRANTED.**

2. Defendant Atwell's motion to dismiss (Doc. 31) is **GRANTED.**

3. Defendants Cooper and Minnich's motion to dismiss (Doc. 48) is **GRANTED.**

4. Plaintiff's Eighth Amendment claim for inhumane prison conditions and his due process claim for improper transfer against Defendant Godwin are **dismissed without prejudice** under 28 U.S.C. § 1915(e)(2)(B).

5. Plaintiff's Fourteenth Amendment due process claim against Defendants Atwell and Minnich is **dismissed without prejudice** under 28 U.S.C. § 1915(e)(2)(B).

6. Plaintiff's Eighth Amendment excessive-force claims against Defendants Godwin, Atwell, Cooper, and Minnich are **dismissed with prejudice** for Plaintiff's failure to state a claim and failure to exhaust his administrative remedies.

7. The Court directs the **Clerk** to enter judgment accordingly, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of March, 2020.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Jerprece Xavier Filmore, #C06220
Counsel of Record